# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## (Norfolk Division)

| | | |
|---|---|---|
| DANTE TYREK VENVERTLOH, INDIVIDUALLY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No: __2:18cv8_____ |
| LINCOLN MILITARY HOUSING, LLC, MID-ATLANTIC MILITARY FAMILY COMMUNITIES LLC, LPC PROPERTY MANAGEMENT, LLC AND LINCOLN PROPERTY COMPANY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendants Lincoln Military Housing, LLC, Mid-Atlantic Military Family Communities LLC, LPC Property Management, LLC, and Lincoln Property Company, (collectively "Defendants"), hereby remove to this Court a civil lawsuit filed in the Circuit Court for the City of Norfolk, Virginia, Case No. CL17-13448. In support of this Notice of Removal, Defendants state:

1. On December 14, 2017, Plaintiff Dante Tyrek Venvertloh ("Plaintiff") filed his Complaint with the Circuit Court for the City of Norfolk. Lincoln Property Company, LPC Property Management, LLC and Mid-Atlantic Military Family Communities LLC were served on December 19, 2017. Lincoln Military Housing, LLC has not been served. No other pleadings have been filed in this action. Copies of the Summons and Complaint are attached as Exhibit ("Ex.") A.

2. Lincoln Military Housing, LLC and Lincoln Property Company join in this removal, but do not have any connection to the events alleged in the Complaint. Lincoln Military Housing, LLC and Lincoln Property Company will be moving to dismiss upon removal.

3. On January 11, 2012, Plaintiff's counsel filed a complaint raising similar types of claims on behalf of Joe and Shelley Federico. Defendants removed that case to this Court on February 10, 2012. See Not. of Removal, Federico v. Lincoln Military Housing, LLC, Case No. 2:12-cv-00080 (E.D. Va. Feb. 10, 2012) ("Federico I"), ECF No. 1. The Federico plaintiffs moved to remand the case to Circuit Court. On September 21, 2012, this Court denied the Federico plaintiffs' motion, finding that the requirements of federal enclave jurisdiction had been satisfied. Op. and Order at 39, Federico I, ECF No. 61.

4. Since that removal, seven similar actions have been removed and consolidated with Federico I (the "Consolidated Cases"). Federico I, ECF Nos. 65, 77, 87, 136. The plaintiffs in the Consolidated Cases did not contest this Court's jurisdiction over those claims.

5. As in the Federico I case, removal of this action is proper based on this Court's federal question jurisdiction under 28 U.S.C. § 1331.

6. Because the events alleged in the Complaint occurred on a federal enclave, this Court has jurisdiction under 28 U.S.C. § 1331. See, e.g., Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998) ("Personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction."); see also Op. and Order, Federico I, ECF No. 61 (upholding removal of nearly identical contract, statutory and tort claims against the same defendants that occurred on the same federal enclave). Authority for federal enclave jurisdiction arises from Article I, section 8, clause 17 of the United States Constitution, which provides in relevant part that "Congress shall have the

power…to exercise exclusive Legislation…over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."  U.S. Const., Art. I § 8, cl. 17.

7.    Courts, including this Court, routinely interpret this clause to permit removal of tort claims filed in state court if the alleged tort was committed on a federal enclave.  For example, in Akin, several air force employees brought toxic tort claims against certain manufacturers of asbestos in state court.  156 F.3d at 1033-34.  The complaint alleged that the employees were exposed to asbestos at the Tinker Air Force Base in Oklahoma City.  Id. at 1033.  The defendants removed the case to federal court based on federal enclave jurisdiction.  Id. at 1034.  The Tenth Circuit upheld removal of the case, finding that "personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction."  Id.; see also Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal Courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"); Stokes v. Adair, 265 F.2d 662, 665-66 (4th Cir. 1959) (finding federal district court possessed jurisdiction over nondiverse parties for personal injuries arising on a federal enclave); Mater v. Holley, 200 F.2d 123, 124-25 (5th Cir. 1952) (finding that federal courts have jurisdiction over torts committed on federal enclaves); Lawler v. Miratek Corp., 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010) (finding that state claim for defamatory statement that was allegedly made at Fort Bliss could be removed under federal enclave jurisdiction).

8.    This Court reached the same conclusion in Federico I, a case virtually identical to this one.  In Federico I, the plaintiffs filed tort, statutory, and contract claims in the Circuit Court for the City of Norfolk, Virginia.  They alleged that they suffered bodily injury and property damages as a consequence of alleged moisture and mold conditions in their home.  The events at issue in

Federico I occurred on the same federal enclave as the one within which Plaintiff in this case resided.  That enclave is owned by the United States Navy and is under concurrent jurisdiction.  Not. of Removal at 2-5, Federico I, ECF No. 1.  This Court denied the Plaintiffs' motion to remand that case, finding that federal interests were sufficient to warrant the exercise of federal enclave jurisdiction over the claims.  Op. and Order at 39, ECF No. 61.

9. A federal enclave is created where the federal government acquires land by purchase or condemnation with the consent of the state or commonwealth in which the land is located.  See Humble Pipe Line v. Waggonner, 376 U.S. 369, 371-72 (1964).  "In determining whether a claim arises on a federal enclave, courts have simply looked to see where all the 'pertinent events' took place."  Rosseter v. Industrial Light & Magic, 2009 WL 210452, at *2 (N.D. Cal. Jan 27, 2009) (citing Stiefel v. Bechtel Corp., 497 F. Supp. 2d 1138, 1148 (S.D. Cal 2007)).

10. In this case, all of the acts alleged in the Complaint occurred on a federal enclave owned by the United States of America, Department of the Navy ("Navy").  Plaintiff resided in military housing located at 104 West Moreell Circle, Norfolk, Virginia, which is part of the Ben Moreell neighborhood.  See Compl. ¶ 14.  Plaintiff has asserted various claims grounded in tort and contract, alleging that he suffered damages when he was exposed to moisture and mold conditions at the home in which he resided.  Id. ¶¶ 16-19.  All events upon which these claims are based occurred in the Ben Moreell neighborhood and, in fact, occurred almost exclusively at Plaintiff's home in that community.  See id. (describing events at home including inspections, complaints, and work done on the home).

11. In 1902, the Virginia legislature passed an act ceding jurisdiction for lands in the Commonwealth purchased or condemned by the United States government:

> Be it enacted by the general assembly of Virginia, That the ***consent of the State of Virginia is hereby given, in accordance with the***

> *seventeenth clause, eighth section, of the first article of the constitution of the United States, to the acquisition by the United States, by purchase, condemnation, or otherwise, of any land in this State required for sites for custom houses, courthouses, post offices, arsenals, or other public buildings whatever, or for any other purposes of the government.*

1901-2 Va. Acts ch. 482 (emphasis added).

12. Plaintiff's home in Ben Morreell, and other properties surrounding it in Norfolk and Portsmouth, Virginia, was originally purchased by the Navy for $122,011 in a condemnation action on February 12, 1942. United States v. City of Norfolk, Case No. 6760 (E.D. Va. 1942) (attached as Ex. 1 to the Declaration of Richard H. Ottinger ("Ottinger Decl.")) (Ex. B.). According to the Court order, the Navy acted pursuant to federal acts that "authorize the acquisition of land for immediate public use and appropriated funds…for military purposes." Id. Because Virginia consented in the Act of 1902 to allow the federal government to obtain jurisdiction through condemnation, this land is unequivocally a federal enclave.

13. Today, the federal government and the Commonwealth of Virginia exercise concurrent jurisdiction over Ben Moreell and the surrounding areas. In a May 8, 1984 letter, the Governor of Virginia, Charles S. Robb, confirmed that the United States and Virginia had concurrent legislative jurisdiction over Ben Morell and other surrounding areas. Ottinger Decl., at ¶ 4 & Ex. 2 (Ex. B).

14. Virginia's exercise of concurrent jurisdiction over the enclave, however, does not negate federal enclave jurisdiction. The Supreme Court has long recognized that a state's reservation of the ability to enforce certain laws does not render the Enclave Clause inapplicable. See Humble Pipe Line, 376 U.S. at 372; see also Virginia v. Reno, 955 F. Supp. 571, 577 (E.D. Va. 1996) ("Although the Enclave Clause refers to 'exclusive' federal jurisdiction over enclaves, the states can condition their consent by reserving vestiges of jurisdiction over ceded areas and, as long

as these reservations do not conflict with announced federal purposes, joint, or dual, jurisdictional arrangements are possible."), vacated as moot, 122 F.3d 1060 (4th Cir. 1997) (per curiam) (Table). Cf. Howard v. Comm'rs of Sinking Fund of City of Louisville, 344 U.S. 624, 627 (1953) ("The fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government.").

15. This case is nearly identical to Federico I, a case in which this Court upheld removal because the events at issue occurred on a federal enclave. In both cases, the events at issue arose on the very same federal enclave in Norfolk, Virginia. In addition, both cases name the same four Defendants. Both cases have been brought by the same plaintiffs' counsel. Plaintiff in this case has brought largely the same tort, statutory and contract claims relating to alleged injury from mold and moisture conditions in military housing allegedly operated by the same Defendants as in Federico I. In Federico I, Judge Doumar found that claims arising out of events in a home located on a federal enclave are properly heard in federal court under the Enclave Clause because the land on which the home sits is under concurrent jurisdiction. Op. and Order at 37-38, Federico I, ECF No. 61. Judge Doumar also held that federal jurisdiction is strengthened because the "case implicate[d] substantial federal interests." Id. at 38. The Court specifically found that "a review of the Complaint, the facts, the parties, and the nature of the public-private venture reveal that almost everything in this case implicates the United States Navy in one form or another." Id. at 32.

16. By the same token, the same "substantial federal interests" present in Federico I are present here. This case concerns military housing operated under the Military Housing Private Initiative adopted by Congress in 1996 to improve the quality of service members' housing. 10 U.S.C. §§ 2871-2885. Under the Initiative, various branches of the Armed Forces have established

public-private ventures to own, develop and manage military housing. Typically, the military leases land to a private entity selected through a competitive bidding process and enters into a public-private venture to develop and manage the military housing on it. Service members who reside in the housing receive a Basic Allowance for Housing from the military to pay their rent.

17. The public-private venture at issue here is Defendant Mid-Atlantic Military Family Communities LLC. In 2005, the Navy and Lincoln Family Communities, LLC entered into an operating agreement to form Mid-Atlantic Military Family Communities LLC ("Operating Agreement"). Mid-Atlantic Military Family Communities LLC, the public-private venture, has primary responsibility for managing the military housing.

18. There are other key agreements between and among the Navy and certain of the Defendants. In July 2005, the Navy and Lincoln Family Communities, LLC entered a fifty-year ground lease (the "Ground Lease") for the Ben Moreell neighborhood and certain other military housing communities in the Hampton Roads area of Virginia and in the State of Maryland. Consistent with the terms of the Ground Lease, Lincoln Family Communities, LLC immediately assigned the Ground Lease to Mid-Atlantic Military Family Communities LLC, the public-private venture entity.

19. Pursuant to the Operating Agreement, Mid-Atlantic Military Family Communities LLC entered into a property management agreement ("Property Management Agreement") with Defendant LPC Property Management, Inc. Under the terms of the Property Management Agreement, LPC Property Management, Inc. acts as an agent of the public-private venture Mid-Atlantic Military Family Communities LLC in performing certain property management functions, such as property leasing.

20. Under the terms of the Ground Lease and Operating Agreement, the Navy retained ownership of the land on which these communities are located and conveyed ownership of the improvements located on the land to the lessee under the Ground Lease for the term of the Ground Lease. Upon termination of the Ground Lease, all improvements on the land shall be abandoned in place and become the property of the Navy as the fee owner of the land.

21. The Operating Agreement and Ground Lease clearly specify that the land and housing units thereon must be used for the governmental purpose of housing enlisted military service members and their families. That is, under the Operating Agreement and Property Management Agreement, Mid-Atlantic Military Family Communities LLC and LPC Property Management, Inc., as its property manager, must offer the housing units first to military service members and their families, and then to Preferred Referrals who work for the Department of Defense, before allowing any civilian to lease a housing unit. The Complaint names as Defendants Mid-Atlantic Military Family Communities LLC, the public-private venture entity in which the Navy has an ownership interest; and LPC Property Management, Inc., the agent that performs certain property management functions for Mid-Atlantic Military Family Communities LLC pursuant to the Property Management Agreement.[1] It also names Lincoln Property Company and Lincoln Military Housing, LLC, trade names used by Mid-Atlantic Military Family Communities LLC and affiliated entities.

22. These claims belong in federal court because the federal government has a strong interest in and will be impacted by the claims in this case. The Enclave Clause of the United States Constitution is a recognition by the Framers that there are some properties in which the federal

---

[1] The Operating Agreement, Ground Lease, and Property Management Agreement have been provided to the Court under seal pursuant to an order by Judge Doumar. See Agreed Order, Federico I, ECF No. 32 (agreed order filing three agreements under seal with the Court).

government has particularly strong interests vis-à-vis the states. By its terms, the Enclave Clause applies not only to the seat of the federal government – the District of Columbia – but also to lands acquired with the states' consent "for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings." U.S. Const. Art. I § 8 cl. 17. The federal government had and has strong interests in the capital and the installations that it uses to provide for the common defense. Plaintiff's allegations and claims concerning events on a federal enclave, including its attack on the Military Housing Privatization Initiative underlying the operation of military housing on it, raises the very interests sought to be protected by the Enclave Clause. See Op. and Order at 32-37, Federico I, ECF No. 61 (finding that plaintiffs' indictment of the Military Housing Privatization Initiative and the contracts the Navy entered under the program raised substantial federal interests sufficient to acquire federal enclave jurisdiction).

23. Plaintiff's theory, by his own admission, seeks to indict the entire military housing program adopted by Congress through the Military Housing Privatization Initiative. Plaintiff gives considerable space in his Complaint to the formation of the public-private venture and the Congressional program that authorized it. Compl. ¶¶ 3, 7-11. Plaintiff claims a "comprehensive scheme to minimize [Defendants'] costs [and] to consciously hide and misrepresent potentially dangerous mold conditions…" Id. ¶ 105. He argues, presumably in support of his negligence and punitive damages claims, that the Military Housing Privatization Initiative "imposed a large burden upon the program private developers to maximize income, minimize maintenance costs and emphasize high occupancy rates," allegedly leading to the breach of the Defendants' duty of care. Id. ¶ 10.

24. The Navy has contractual obligations and financial interests that would be affected by the claims and allegations raised in this case. The case also may affect the public-private venture

agreements that have been adopted by the Navy and implemented by public-private ventures throughout the country. In these circumstances, the federal government undoubtedly has a substantial interest in the resolution of the claims raised in this suit. See Op. & Order at 32-37, Federico I, ECF No. 61 ("A review of the Complaint, the facts, the parties, and the nature of the public-private venture reveal that almost everything in this case implicates the United States Navy in one form or another."). Cf. Nicodemus v. Union Pacific Corp., 440 F.3d 1227, 1236 (10th Cir. 2006) (finding substantial federal interest in land dispute when federal government had reversionary interest in the land); McMahon v. Presidential Airways, Inc., 410 F. Supp. 2d 1189, 1201 (M.D. Fla. 2006) (finding federal question jurisdiction because case involved federal procurement contract regarding military operations in Afghanistan; "issues involving a government contract and United States military operations are implicated, and substantial contested federal issues are apparent").[2]

25. Because Plaintiff's claims are based on alleged acts that occurred on a federal enclave and because the federal government has a substantial interest in that enclave and the claims arising on it, this Court has jurisdiction to hear this controversy pursuant to 28 U.S.C. § 1331.

26. Defendants have timely removed this action because they filed this Notice of Removal within thirty days of being served with the Complaint. 28 U.S.C. § 1446(b)(1).

27. The Circuit Court for the City of Norfolk is located in the United States District Court for the Eastern District of Virginia. Accordingly, this Court is the proper Court to which to remove this action.

---

[2] "The imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price. Either way, the interests of the United States will be directly affected." Boyle v. United Technologies Corp., 487 U.S. 500, 507 (1988).

28. Pursuant to 28 U.S.C. § 1446(a), Defendants are required to attach to this Notice "a copy of all process, pleadings, and orders served upon" them. Accordingly, Defendants attach as Exhibit A the Summons and Complaint filed in Virginia state court.

29. Defendants Lincoln Property Company, Lincoln Military Housing, LLC, Mid-Atlantic Military Family Communities LLC, and LPC Property Management, Inc. consent to this removal. Mayo v. Board of Educ., 713 F.3d 735, 742, 2013 WL 1459249 at *6 (4th Cir. Apr. 11, 2013) ("[A] notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal.").

30. A copy of the written notice required by 28 U.S.C. § 1446(d) addressed to Plaintiff's counsel and to the Clerk of the Circuit Court for the City of Norfolk is attached as Exhibit C. It will be filed with that Clerk and, along with this Notice of Removal, will be served on Plaintiff after the filing of this Notice of Removal.

                                            Respectfully submitted,

                                            */s/ Richard H. Ottinger*
                                                 Of Counsel

Richard H. Ottinger (VSB #38842)
Email: rottinger@vanblacklaw.com
Blake R. Christopher (VSB #89071)
bchristopher@vanblacklaw.com
VANDEVENTER BLACK LLP
101 W. Main St., Suite 500
World Trade Center
Norfolk, VA 23510
T: (757) 446-8600
F: (757) 446-8670
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of January 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the recipients listed below.  I further certify that I will mail the document by U.S. Mail to the following recipients:

David S. Bailey
The Environmental Law Group, PLLC
Liberty Plaza One, Suite 106
4801 Cox Road
Glen Allen, Virginia 23060
(804) 433-1980
dbailey@igc.org

               */s/ Richard H. Ottinger*
                Of Counsel


Richard H. Ottinger (VSB #38842)
Email: rottinger@vanblacklaw.com
Blake R. Christopher (VSB #89071)
bchristopher@vanblacklaw.com
VANDEVENTER BLACK LLP
101 W. Main St., Suite 500
World Trade Center
Norfolk, VA 23510
T: (757) 446-8600
F: (757) 446-8670
*Attorneys for Defendants*