# COMMONWEALTH OF VIRGINIA



NORFOLK CIRCUIT COURT
Civil Division
150 ST. PAUL'S BLVD 7TH FLOOR
NORFOLK  VA  23510
(757) 769-8539

**FILED**

DEC 2 ? 2017

NORFOLK CIRCUIT COURT CLERK
BY _____ D.C.

Proof of Service

Virginia:
In the NORFOLK CIRCUIT COURT

Case number: 710CL17013448-00
Service number: 002
Service filed: December 13, 2017
Judge:

Served by: HENRICO COUNTY
Style of case: DANTE TYREK VENVERTLOH vs LINCOLN MILITARY HOUSING LLC
Service on: CT CORPORATION SYSTEM                    Attorney: BAILEY, DAVID S
        REGISTERED AGENT                                      804-433-1980
        LPC PROPERTY MANAGEMENT, LLC
        4701 COX ROAD, SUITE 285
        GLEN ALLEN VA 23060   3132685

2017 DEC 18   2:59

Instructions:

Returns shall be made hereon, showing service of Summons issued Thursday, December 14, 2017 with a copy of the
Complaint filed Wednesday, December 13, 2017 attached.

Hearing date   :
Service issued: Thursday, December 14, 2017

## For Sheriff Use Only

DEC 19 2017 DATE

☐ NO EFFECTS FOUND

☐ Not Found

☐ Served on registered agent _____

☐ Exicuted   ☐ Not Exicuted

☐ Posted on the front door or the below other
  serving the gambrinae unless a different date is
  shown below.

☐ Posted on the common door of usual place of abode,
  address listed above. (Other authorized recipient not
  found.)

☐ Copy mailed to judgment debtor on date below other
  party named above giving information of its purport.

☐ Delivered to family member (not temporary sojourner
  or guest) age 18 or older at usual place of abode of
  List name, age of recipient and relation of recipient
  to party named above.

☐ Delivered to person found in charge of
  business or employment during business hours and
  giving information to its purport.

☐ Being unable to make personal service, a copy was
  delivered in the following manner.
  delivered to person found at usual place of

☑ PERSONAL SERVICE

☐ NAME
  NAME AND ADDRESS
  SAME AS FRONT

FOR: Sheriff Michael L Wade
Henrico County, Virginia

DEPUTY SHERIFF



**DEFENDANT'S EXHIBIT**
A

## Service Authorization
## CT Corporation System

CT Corporation System ("CT") is registered agent for service of process for numerous corporations and similar entities. CT receives the process only in its capacity as a commercial registered agent. The individuals designated below are employees of CT Corporation System and in receiving the process, do so only on CT's behalf and in CT's capacity as registered agent.

**PLEASE NOTE:** The Code of Virginia §§ 13.1-634 provides in part:
"Registered office and registered agent.
A....
B. The sole duty of the registered agent is to forward to the corporation at its last known address any process, notice or demand that is served on the registered agent."

_As such, neither CT Corporation System, nor its individual employees designated below, have the duty or the ability to respond to any legal process, notice or demand that is served on CT's clients._

The following natural persons are designated in the office of the registered agent upon whom any process, notice or demand may be served:

Katie Bush          Teresa Brown          Jabrel Samuel

This authorization does not certify the receipt or acceptance of any specific process

Teresa Brown
Team Leader
CT Corporation System

State of Virginia
County of Henrico

This day personally appeared before me, Teresa Brown, who name is signed above and who, being first duly sworn, upon her oath, state that the foregoing Affidavit is true to the best of her knowledge and belief.

Subscribed and sworn before me this 20th day of November, 2017.

Notary Public
Commission exp. 2/28/19

LISA D. CHRISTIAN
NOTARY PUBLIC
MY COMMISSION
NUMBER
7510278
COMMONWEALTH OF VIRGINIA

# COMMONWEALTH OF VIRGINIA



NORFOLK CIRCUIT COURT
Civil Division
150 ST. PAUL'S BLVD 7TH FLOOR
NORFOLK VA 23510
(757) 769-8539



Proof of Service

Virginia:
  In the NORFOLK CIRCUIT COURT

Case number: 710CL17013448-00
Service number: 003
Service filed: December 13, 2017
Judge:

Served by: HENRICO COUNTY

Style of case: DANTE TYREK VENVERTLOH vs LINCOLN MILITARY HOUSING LLC

Service on: CT CORPORATION
REGISTERED AGENT
LINCOLN PROPERTY COMPANY
4701 COX ROAD, SUITE 285
GLEN ALLEN VA 23060  3132689

Attorney: BAILEY, DAVID S
804-433-1980

Instructions:

Returns shall be made hereon, showing service of Summons issued Thursday, December 14, 2017 with a copy of the Complaint filed Wednesday, December 13, 2017 attached.

Hearing date   :
Service issued: Thursday, December 14, 2017

For Sheriff Use Only

# Service Authorization
## CT Corporation System

CT Corporation System ("CT") is registered agent for service of process for numerous corporations and similar entities. CT receives the process only in its capacity as a commercial registered agent. The individuals designated below are employees of CT Corporation System and in receiving the process, do so only on CT's behalf and in CT's capacity as registered agent.

**PLEASE NOTE:** The Code of Virginia §§ 13.1-634 provides in part:
"Registered office and registered agent.
A....
B. The sole duty of the registered agent is to forward to the corporation at its last known address any process, notice or demand that is served on the registered agent."

*As such, neither CT Corporation System, nor its individual employees designated below, have the duty or the ability to respond to any legal process, notice or demand that is served on CT's clients.*

The following natural persons are designated in the office of the registered agent upon whom any process, notice or demand may be served:

　　Katie Bush　　　　　　　Teresa Brown　　　　　　　Jabrel Samuel

This authorization does not certify the receipt or acceptance of any specific process

Teresa Brown
Team Leader
CT Corporation System

State of Virginia
County of Henrico

This day personally appeared before me, Teresa Brown, who name is signed above and who, being first duly sworn, upon her oath, state that the foregoing Affidavit is true to the best of her knowledge and belief.

Subscribed and sworn before me this 20th day of November, 2017.

Notary Public
Commission exp.  2/28/19

*[Notary seal: LISA D. CHRISTIAN, NOTARY PUBLIC, MY COMMISSION NUMBER 7610278, COMMONWEALTH OF VIRGINIA]*

# COMMONWEALTH OF VIRGINIA





NORFOLK CIRCUIT COURT
Civil Division
150 ST. PAUL'S BLVD 7TH FLOOR
NORFOLK VA 23510
(757) 769-8539

Proof of Service

Virginia:
In the NORFOLK CIRCUIT COURT

Case number: 710CL17013448-00
Service number: 001
Service filed: December 13, 2017
Judge:

Served by: HENRICO COUNTY
Style of case: DANTE TYREK VENVERTLOH  vs LINCOLN MILITARY HOUSING LLC
Service on: CT CORPORATION SYSTEM                    Attorney: BAILEY, DAVID S
REGISTERED AGENT                                              804-433-1980
MID-ATLANTIC MILITARY FAMILY
COMMUNITIES
4701 COX ROAD, SUITE 285    3132683
GLEN ALLEN VA 23060

Instructions:

Returns shall be made hereon, showing service of Summons issued Thursday, December 14, 2017 with a copy of the
Complaint filed Wednesday, December 13, 2017 attached.

Hearing date  :
Service issued: Thursday, December 14, 2017

For Sheriff Use Only

NAME AND ADDRESS

PERSONAL SERVICE

☐ Being unable to make personal service, a copy was
delivered in the following manner:
☐ Delivered to person found in charge of usual place of
business or employment during business hours and
giving information to its purport.
☐ Delivered to family member (not temporary sojourner
or guest) age 16 or older at usual place of abode of
party named above giving information of its purport.
List name, age of recipient and relation of recipient
to party named above.
☐ Posted on the common door of usual place of abode.
address listed above. (Other authorized recipient not
found.)
☐ Copy mailed to judgment debtor on date below after
serving the garnishee unless a different date is
shown below.
☐ Eiected   ☐ Not Eiected
☐ Served on registered agent _I.S.b.l.s.b.l.b/a_

☒ NO EFFECTS FOUND
DEC 18 2017
☐ Not Found

DATE

DEPUTY SHERIFF
Eeb G. Burbridge
FOR: Sheriff, Michael L. Wade
Henrico County, Virginia

## Service Authorization
## CT Corporation System

CT Corporation System ("CT") is registered agent for service of process for numerous corporations and similar entities. CT receives the process only in its capacity as a commercial registered agent. The individuals designated below are employees of CT Corporation System and in receiving the process, do so only on CT's behalf and in CT's capacity as registered agent.

**PLEASE NOTE:** The Code of Virginia §§ 13.1-634 provides in part:
"Registered office and registered agent.
A....
B. The sole duty of the registered agent is to forward to the corporation at its last known address any process, notice or demand that is served on the registered agent."

*As such, neither CT Corporation System, nor its individual employees designated below, have the duty or the ability to respond to any legal process, notice or demand that is served on CT's clients.*

The following natural persons are designated in the office of the registered agent upon whom any process, notice or demand may be served:

Katie Bush                    Teresa Brown                    Jabrel Samuel

This authorization does not certify the receipt or acceptance of any specific process

_____

Teresa Brown
Team Leader
CT Corporation System

State of Virginia
County of Henrico

This day personally appeared before me, Teresa Brown, who name is signed above and who, being first duly sworn, upon her oath, state that the foregoing Affidavit is true to the best of her knowledge and belief.

Subscribed and sworn before me this 20th day of November, 2017.

_____

Notary Public
Commission exp. 2/28/19

LISA D. CHRISTIAN
NOTARY PUBLIC
MY COMMISSION
NUMBER
7510278
COMMONWEALTH OF VIRGINIA

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

DANTE TYREK VENVERTLOH,      )
                                      )

     Plaintiff,            )

V.                            )       Civil Action No. CL17-13448

LINCOLN MILITARY HOUSING, LLC, AKA  )
LINCOLN MILITARY HOUSING, an Affiliate  )
Company of Lincoln Property Co,        )
MID-ATLANTIC MILITARY FAMILY        )
COMMUNITIES, LLC, LPC PROPERTY    )
MANAGEMENT, LLC, AND LINCOLN     )
PROPERTY COMPANY,              )

     Defendants.           )

SERVE:     CT Corporation System, Registered Agent
             Mid-Atlantic Military Family Communities
             4701 Cox Road, Suite 285
             Glen Allen, Virginia 23060

             CT Corporation System, Registered Agent
             LPC Property Management, LLC
             4701 Cox Road, Suite 285
             Glen Allen, Virginia 23060

             CT Corporation, Registered Agent
             Lincoln Property Company
             4701 Cox Road, Suite 285
             Glen Allen, Virginia 23060

### COMPLAINT FOR DAMAGES

    1.    Dante Venvertloh ("Plaintiff") brings this action for personal injury against

the above named defendants for damages and injury suffered from damp indoor space

and mold exposures in rental military housing owned and managed by the Defendants

Lincoln Military Housing, LLC, Mid-Atlantic Military Family Communities, LLC, LPC

1

Property Management, LLC., and Lincoln Property Company.

### PARTIES

2.      Dante Venvertloh ("Plaintiff") is the adult son of Eartha and Jamie Venvertloh, who resided in military housing as a minor child, while his Father Jamie Venvertloh served in the military. While living in such housing as a minor, Plaintiff was exposed to repeated and excessive moisture and mold conditions, known as a "damp indoor space," and as a result suffered personal injury.

3.      Lincoln Property Company is a foreign corporation with principal offices in Texas. Upon information and belief, including information from the Lincoln Property Company website, Lincoln Property Company "joined forces" with the U.S. Department of Defense to renovate and redevelop military housing for the Navy, the Marine Corps, and the Army, and "Lincoln Property Company is now one of the largest operators of military housing in the Country."

To perform this large scale property function, Lincoln Property Company "assembled a group of seasoned professionals who pursue a sophisticated approach to property development and management." Included in the Lincoln Property Company management team is Jarl Bliss, President of Defendant Lincoln Military Housing, and Jeff Franzen, Executive Vice-President of Defendant Mid-Atlantic. Lincoln Property Company asserts that the "Lincoln Military leadership team" will, among other things, "continue to build our reputation as a dedicated partner to the Department of Defense."

At the time of these incidents, the Lincoln Property Company website listed Lincoln Property Company executive officers Jarl Bliss as senior vice-president for Defendant Lincoln Military Housing, and Jeff Franzen as executive vice-president for the Mid-Atlantic

2

Region.  Throughout the Lincoln websites are frequent references to a generic "Lincoln" name, which is used interchangeably with Lincoln Property Company and Lincoln Military Housing, and such name uses hold out "Lincoln" to be trained and competent in all forms of property management and providing for "comprehensive training" for all "maintenance personnel."

The Lincoln Military Housing website states that "Lincoln Military Housing is a part of Lincoln Property Co. and has over 40 years experience in property management."  The Lincoln Property Co. website further states, "local operating offices are managed by senior executives [already identified herein as Defendant entities]" and involve a "host of satellite offices."  Further, in an affidavit filed by the General Counsel for Lincoln Property Company, General Counsel stated that "Lincoln Military Housing" is used nationwide as a brand and refers generally to a group of affiliated companies engaged in the management of military housing.  The cited marketing resources make evident that Lincoln Property Company is one of the affiliated companies, indeed, the organizational head and controlling entity of such companies, that collectively operate the management of military housing as a joint venture with such affiliated companies.  Further, that Lincoln Property Company is in a principal and/or agent relationship with such other named entities, and exercises direct control and operational management of its executive team, including Defendants Lincoln Military Housing and Mid-Atlantic, and controls through its satellite offices all of the military housing in this case.

Lincoln Property Co. is thus vicariously liable for the actions of its "leadership team."  Lincoln Property Company does business in the Tidewater area, and controls, as asserted above, properties throughout the Tidewater area including Norfolk, Virginia,

3

Agents, representatives and/or employees of Lincoln Property Company have appeared at military housing units operated by Mid-Atlantic Military Family Communities LLC and LPC Property Management, LLC and rendered opinion about mold and water remediation in such unit(s).

In addition, and upon information and belief, the relationship of Lincoln Property Co. as to the other named defendants, and to each other, is contained in the property management agreement between Defendants Mid-Atlantic Military Family Communities and LPC Property Management, LLC., the operating agreement between the U.S. Department of the Navy and Lincoln Family Communities, LLC, as later assigned to Mid-Atlantic, all documents claimed as confidential by all Defendants and incorporated herein by reference.

4.    Lincoln Military Housing, LLC, is a Delaware limited liability company not registered to do business in Virginia, but is a creation of Lincoln Property Company. Lincoln Military Housing is used as a brand name for Lincoln military property management. All correspondence and relationships with the plaintiffs in this case and military housing under Lincoln Property Company identifies Lincoln Military Housing, LLC as the brand name encompassing all military housing rentals and operations.   Jari Bliss, the senior Vice President for Lincoln Military Housing, is also a part of the executive offices of Lincoln Property Company and is responsible for the development and management of military housing in Tidewater Virginia.  Defendants have represented that Lincoln Military Housing is a brand name only with no independent authority to act. Therefore no claims are made against Lincoln Military Housing, LLC and they are named only for the unknown possibility that they may be a necessary party.

4

5.     Mid-Atlantic Military Family Communities, LLC is a Delaware limited liability company registered to do business in Virginia, a subsidiary organization of Lincoln Family Communities, LLC, and is identified as the owner/landlord on the leasing agreements for the subject housing unit.  Mid-Atlantic Military Family Communities is listed as the "owner" on the Community Handbook provided to Plaintiffs.  Mid-Atlantic Military Family Communities is actively involved in property management through leases under its name throughout the Tidewater area, including Norfolk, Virginia.

In addition, and upon information and belief, the relationship of Mid-Atlantic Military Family Communities, LLC as to the other named defendants, and to each other, is contained in the property management agreement between Defendants Mid-Atlantic Military Family Communities and LPC Property Management, LLC, the operating agreement between the U.S. Department of the Navy and Lincoln Family Communities, LLC, as later assigned to Mid-Atlantic, all documents claimed as confidential by all Defendants and incorporated herein by reference.

6.     LPC Property Management, LLC is a Delaware corporation, the authorized agent for Mid-Atlantic Military Family Communities, and manages, including, upon information and belief, the performance of all maintenance activities for the subject housing unit occupied by the Plaintiff.  LPC Property Management is actively involved in property management through leases arrangements designating it as property manager throughout the Tidewater area, including Norfolk, Virginia.

In addition, and upon information and belief, the relationship of LPC Property Management, LLC, as to the other named defendants, and to each other, is contained in the property management agreement between Defendants Mid-Atlantic Military Family

5

Communities and LPC Property Management, LLC, the operating agreement between the U.S. Department of the Navy and Lincoln Family Communities, LLC, as later assigned to Mid-Atlantic, all documents claimed as confidential by all Defendants and incorporated herein by reference.

## BACKGROUND AND FACTS

7.     In 1996, responding to the deteriorating condition of military housing and in Congressional recognition that family housing was not a core function of the armed forces, Congress enacted the Military Housing Privatization Initiative ("MHPI") program.

8.     The MHPI operates to grant long term lease arrangements for existing and planned housing to private developers. The typical program involves leasing the government owned land for a 50 year term to a private developer, who then becomes the owner of any existing, improved or later constructed housing. The program may include federal grant funding, but in all cases guarantees rental income to the developer by direct payment of the military member's housing allotment to the developer.

9.     The MHPI was intended to improve existing military housing stock as well as promote construction of new housing. At all times, and consistent with Congressional intent, military housing is to be "well maintained and structurally sound and shall not pose a health, safety or fire hazard," as required by the Department of Defense Housing Management Manual, dated October 28, 2010, incorporated herein by reference.

10.    When the MHPI program was enacted, it was recognized that the improvement of existing military housing stock and the future expansion of new or replacement military housing might cost as much as $20 billion, and under the best scenario of government help, the government might contribute up to $3 billion. The

6

resulting differential imposed a large burden upon the program private developers to maximize income, minimize maintenance costs and emphasize high occupancy rates. Indeed, such military housing units under the program must be rented to even non-military tenants if no military family needs housing, in order to ensure the maximum return of rent to the developer.

11.     Although the MHPI program envisioned oversight by the area military commanders, such oversight was variable, and upon information and belief, was nonexistent at the Plaintiffs' military command until well after Plaintiffs' mold exposures began.  As a result, the Defendants managed Plaintiffs' military housing with no supervision by the local military authority, who relied completely on the MHPI developer, in this case Lincoln Military Housing, LLC, Mid-Atlantic Military Family Communities, LLC, LPC Property Management, LLC, Lincoln Property Company, and their agents, to provide safe and habitable housing for military families.

12.     Jamie Venvertloh is an enlisted Chief in the United States Navy.  Jamie Venvertloh, his wife and minor children, including Plaintiff Dante Venvertloh, were originally assigned military housing in 2000 under a lease with the Department of the Navy.

13.     During the roughly five year period of leasing with the Department of the Navy from 2000 until 2005, there were few unaddressed moisture issues, no mold issues and the family remained generally healthy.

14.     On or about August of 2005, the Navy rolled over its existing lease to Plaintiff's parents to reflect a new lease arrangement with Lincoln Military Housing at the subject unit, 104 West Moreell Circle, Norfolk, Virginia 23505.

7

15.    Beginning on or about the summer of 2006, and continuing during the remainder of the unit occupancy, Plaintiff's parents had to contend with repeated water leaks from sprinkler systems, burst pipes, water intrusion events, bubbling and peeling paint, HVAC leaks and water heater failures. Although such water events were repeatedly reported to LMH, repairs were often delayed, inadequate and water and mold remediation was spotty and inconsistent. Promises to repair were not kept or delayed, and on some occasions LMH maintenance persons tried to blame the water stains and damage on the Venvertloh children.

16.    During this same period, LMH personnel variously represented that there was no evidence of mold when mold was visible, and contractors and LMH maintenance personnel failed to perform proper water and mold remediation on numerous occasions, leaving the family and Plaintiff exposed to mold conditions.

17.    As conditions inside the unit continued to deteriorate in 2011, Plaintiff's parents demanded a proper mold inspection, but the inspector sent by LMH did not have proper certification, took no samples and after 15 minutes inside the unit declared it mold free. The mold inspection firm, Apex, had a history of sloppy and incomplete inspections of military housing and reported, in a November 29, 2011 inspection, that there were no water damaged areas inside the home and no mold growths.

18.    Plaintiffs parents continued to complain and the Navy contracted for an inspection by Marine Chemist, a local qualified mold inspection entity, who inspected the unit on December 23, 2011, just over three weeks after the Apex inspection.

19.    The Marine Chemist report found extensive evidence of past, present and on-going water damage and visible mold growths.

8

20.     Plaintiff was borne on December 16, 1997 and spent his early childhood years in a New York location and two residences in Virginia Beach and Norfolk prior to base housing.  No significant water intrusion or known mold growths were noted in any of these unit prior to relocation to military in 2000.

21.     Plaintiff had been diagnosed with respiratory viral infections ("RSV") since shortly after birth.  These respiratory problems were treated with traditional nebulizers and symptom control.

22.     Both the Navy, during Navy control of the housing unit, and LMH, during all periods of control by LMH, were advised of Plaintiff's respiratory problems and the need for a mold free environment.

23.     Plaintiff, however, was exposed to frequent and repeated water intrusion events and mold growths after LMH took control of the subject unit, with Plaintiff's symptoms and problems increasing.

24.     As a result of his increasing illness, Plaintiff suffered from occasional memory loss, his grades fell significantly at school, he became subject to bullying, developed a serious depression condition and ultimately attempted suicide.

25.     Ultimately, Plaintiff's condition and mental health began to improve and Plaintiff now requires much less symptom treatment and drugs.

### DAMP INDOOR SPACES

26.     The subject unit is a water damaged building, i.e., a residential structure which has been subject to excessive water intrusion from both external and internal water leaks and moisture accumulation.  The term "water damaged building" ("WDB") is also used in conjunction with a descriptive term now used by the National Academies of

9

Science, the U.S. Centers for Disease Control ("CDC"), and the World Health Organization, and others, i.e., "damp indoor spaces" and "mold related illness," all of which collectively describe a mixture of biologically generated contaminates known to cause adverse human health effects. Damp Indoor Spaces and excessive moisture conditions are also often associated with pests and insects, such as mites, spiders, cockroaches and other pests favoring moist conditions, all of which can cause additional adverse human health effects, and all of which were present in the subject home.

27.     There is no single pollutant, toxic chemical or biological growth that accounts for the illness and medical costs resulting from an exposure to a damp indoor space, but rather buildings incurring moisture related damage may expose people to a complex mixture of microorganisms, including bacterial growth which almost always accompanies mold growth, mold growth itself, mold spores and fragments, bacteria cells and cellular materials which may release "endotoxins" (components of bacterial cell walls which have strong inflammatory properties), structural components of both mold and bacteria, and microbial products such as microbial volatile organic compounds ("MVOCs") and mycotoxins. In addition, dampness can also cause building materials to release chemicals and non-biological particles.

28.     Although molds and fungi may be present indoors, fungal growth and amplification is not likely inside a dry, clean building. Excessive moisture conditions in water intruded damp indoor spaces results in the growth of particular molds which favor or utilize indoor building materials such as wood, drywall, carpet materials and can grow to excessive indoor numbers. Many of these indoor growth molds have been identified and associated with serious human health effects, especially to persons with existing

10

sensitivities.

29.      Exposures to damp indoor spaces have long been known to be associated
with and be a causative factor in a wide range of adverse health effects, including but not
limited to certain allergic reactions, asthma and other chronic respiratory conditions as
experienced here by Plaintiff.

30.      The Commonwealth of Virginia has adopted and incorporated by reference
"professional mold remediation standards" (Va. Code § 8.01-226.12) which *shall* be
employed in the mold remediation of housing units subject to the Virginia Residential
Landlord Tenant Act (Va. Code § 55.2-248.2), as is the case here.  The cleaning process
is complex, time consuming and very expensive, and commercial cleaning companies
who engage in this work must be certified and trained and cannot provide any guarantee
for complete removal of the microscopic spores once contamination has occurred.

31.      In this case, inspections performed at Plaintiffs' unit identified excessive
mold growths and moisture inside the unit, typical of a damp indoor space, both by
sampling and visual observation.  Visible mold was observed at several locations and
mold presence was affirmed by testing, and evidence of water damaged building
materials was repeatedly evident over a period of many months.

32.      The personal injuries sustained by Plaintiff in this case are consistent with
established medical and scientific literature on exposure to damp indoor spaces and
water damaged buildings.

33.      The potential for mold infestation and adverse human health effects in
water intruded buildings was specifically addressed as early as 2001 by the U.S.

11

Environmental Protection Agency in a special guidance entitled "Mold Remediation in Schools and Commercial Buildings," and is applicable to the military housing at issue. Mold health effects and the relationship of mold growths to excess moisture have been reported and well documented in the published governmental medical, scientific and commercial literature for years prior to the occupancy of the tenants in this case.

34.     Lincoln Property Company, Mid-Atlantic Military Family Communities, and LPC Property Management, all as part of a large national and international manager and owner of thousands of apartment and residential units, knew full well of the health risks associated with water damaged buildings and mold. Defendants Lincoln Property Company, Mid-Atlantic Military Family Communities, and LPC Property Management and their agents failed to remediate mold in Plaintiffs' unit in accordance with Virginia professional practices and caused serious injury to Plaintiff as a result.

**COUNT I**

**COMMON LAW NEGLIGENCE**
**AGAINST MID-ATLANTIC MILITARY FAMILY COMMUNITIES, LLC.**

35.     Paragraphs 1 - 34 are realleged and incorporated herein.

36.     As the owner of the subject military housing unit, Defendant Mid-Atlantic Family Communities was the "Landlord" and/or owner of the unit.

37.     Plaintiff was a named occupant of such military housing and was an authorized occupant of the unit.

38.     As landlord, Defendant Mid-Atlantic Family Communities had a common law duty to warn Plaintiff and/or Plaintiff's parents, (1) of known and concealed defects rendering the occupation of the premises dangerous; (2) a duty to perform with

12

reasonable care any repairs undertaken; and (3) a duty to maintain in safe and habitable condition the premises outside of Plaintiff's exclusive possession and control.

39.    Defendant Mid-Atlantic Family Communities breached the duties owed to Plaintiff by failing to warn Plaintiff and/or Plaintiff's parents of past water leaks and/or water/mold contamination which had been negligently repaired, by failing to perform with reasonable care the repairs undertaken to address water intrusion, moisture conditions, and mold growths that occurred during Plaintiff's occupancy, and by failing to prevent and control water intrusion from sources outside the tenants' possession and control, all resulting in the proliferation of dangerous mold conditions in Plaintiff's unit.

40.    Defendant Mid-Atlantic Family Communities caused its agents to repeatedly enter the subject unit for the purpose of making water, mold and equipment related thereto repairs, and upon entering such unit failed to complete such repairs leaving work undone and still contributing to mold and water conditions inside the unit, failed to properly repair sources of water such that repairs failed and more water intrusion resulted, with the result that mold and/or water conditions remained causing injury to Plaintiff.

41.    Defendant Mid-Atlantic Family Communities and/or its agents negligently made repairs by failing to make such repairs for mold and moisture remediation in accordance with professional standards in the field for mold and moisture remediation, failed to ensure identification of and full correction of water intrusion sources, failed to properly identify and remove all contaminated building materials, failed to properly remove and clean all mold contaminated areas, and failed to remove Plaintiff from such contaminated areas.

13

42.     Defendant Mid-Atlantic Family Communities failed to control and timely remediate areas outside the possession and control of the Plaintiff and/or her parents, such as roof leaks, attic contamination with mold, water heater leaks, and areas behind walls and cabinets, which Plaintiff and/or her parents could not repair themselves by lease condition.

43.     Defendant Mid-Atlantic Family Communities failed to warn Plaintiff and/or her parents as to the existence of mold inside the subject unit, of the existence of past water leaks and continued water and mold conditions known to them or reasonably known to them by inspection.

44.     As a direct result of Defendant's failure to warn of water and mold conditions, failure to timely and properly investigate, repairs and/or remediate with reasonable care the mold and moisture conditions, Plaintiff suffered personal injury and medical expense, with all such injuries and harms being proximately caused by Defendant Mid-Atlantic Family Communities, who is liable therefore.

## COUNT II

## COMMON LAW NEGLIGENCE AGAINST LPC PROPERTY MANAGEMENT, LLC

45.     Paragraphs 1 - 44 are realleged and incorporated herein.

46.     Pursuant to lease  agreement with Defendants Mid-Atlantic Military Family Communities, LLC, Defendant LPC Property Management, LLC is identified as the managing agent for the subject unit.

47.     As managing agent for the subject property, Defendant LPC Property Management was tasked with and assumed specific duties of maintenance and repair,

14

and its agents, employees and repair personnel represented themselves as competent, trained and qualified to make such repairs to the unit.

48.     Defendant LPC Property Management, its agents and employees, owed a common law duty to Plaintiff and/or her parents, who lived in the subject unit, to perform all repairs and work in a professional and non-negligent manner, to follow professional standards of work in the field, and at all times to perform such work without resulting dangerous, unsafe, or mold contaminated conditions remaining, and so as to not cause harm to Plaintiff.

49.     Employees and agents of Defendant LPC Property Management entered the Plaintiff's unit, and performed and assumed duties to perform maintenance work and repairs, and the performance of such duty failed to make repairs in a reasonable and non-negligent manner by failing to complete such repairs leaving work undone and still contributing to mold and water conditions inside the unit, failed to properly repair sources of water such that repairs failed and more water intrusion resulted, negligently making repairs by failing to make such repairs for mold and moisture remediation in accordance with professional standards in the field for mold and moisture remediation, failed to ensure identification of and full correction of water intrusion sources, failed to properly identify and remove all contaminated building materials, failed to properly remove and clean all mold contaminated areas, and failed to remove Plaintiff from such contaminated areas, all resulting in injury to Plaintiff.

50.     As a direct result of Defendant's failure to warn of water and mold conditions, failure to timely and properly investigate, repairs and/or remediate with reasonable care the mold and moisture conditions, Plaintiff suffered personal injury and

15

medical expense, with all such injuries and harms being proximately caused by Defendant LPC Property Management, LLC, who is liable therefore.

## COUNT III

### NEGLIGENCE PER SE
### AGAINST DEFENDANT MID-ATLANTIC FAMILY COMMUNITIES

51.     Paragraphs 1- 50 are realleged and incorporated herein.

52.     Section 36-98 of the Virginia Code empowers the Board of Housing and Community Development to adopt and promulgate a Uniform Statewide Building Code. This building code supercedes all building codes of the counties, municipalities, and other political subdivisions and state agencies.

53.     The Virginia Building and Housing Codes, and the Building and Housing Codes of Local Governments, are statutory and regulatory provisions designed to protect the public health, safety and welfare. Virginia Uniform Statewide Building Code Part III, Virginia Maintenance Code § 102.1 (2009).

54.     Chapters 2 - 8 of the 2009 International Property Maintenance Code are adopted and incorporated by reference to be an enforceable part of the Virginia Maintenance Code. Virginia Maintenance Code § 101.2.

55.     Under the Virginia Maintenance Code, an "Owner" is defined as "any person, agent, operator, firm or corporation having a legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; or otherwise having control of the property. . ." Virginia Maintenance Code § 202. Defendant Mid-Atlantic Family Communities is an "owner" within the definition of the code.

16

56.     Under the Virginia Maintenance Code, Defendant Mid-Atlantic Family
Communities is an owner responsible for the maintenance of buildings, structures and
premises. Virginia Maintenance Code § 301.2.

57.     Plaintiff, an authorized occupant in a leased unit subject to the provisions
of the Virginia Building and Housing Codes, is within the class of persons to be protected
by applications of such building and housing codes, including the following sections of the
Virginia Uniform Statewide Building Code Part III, Virginia Maintenance Code: 301.2,
305.1, 304.7, 501.1 and 504.1.

58.     Defendant Mid-Atlantic Family Communities had common law duties to
warn of known and concealed dangers in the unit, not to negligently repair conditions
inside the Plaintiff's unit, and to properly and timely repair unit conditions outside the
control of the Plaintiff, such as water leaks from multiple sources. As alleged and
incorporated herein, Defendant Mid-Atlantic did not comply with and violated these
underlying common law duties.

59.     Defendant Mid-Atlantic Family Communities breached the standard of care
prescribed by the Virginia Maintenance Code at section 301.2 by permitting another
person to occupy premises which were not in a sanitary and safe condition, i.e., exposure
to excessive moisture and mold growths.

60.     Defendant Mid-Atlantic Family Communities breached the standard of care
prescribed by the Virginia Maintenance Code at section 305.1 by failing to maintain the
interior of a structure and the equipment therein in good repair, structurally sound and in
a sanitary condition, i.e., leaking and damaged walls, ceilings and windows, leaking
plumbing, HVAC and interior living spaces contaminated with excessive moisture and

17

mold growths.

61.     Defendant Mid-Atlantic Family Communities breached the standard of care prescribed by the Virginia Maintenance Code at section 304.7, by failing to maintain the building exterior in a water tight condition so as to not admit exterior water entry into the subject unit.

62.     Defendant Mid-Atlantic Family Communities breached the standard of care prescribed by the Virginia Maintenance Code at sections 501.2 and 504.1 by failing to maintain the plumbing in a water tight condition so as to not to leak water into the apartment and permitting tenants to remain in a unit where such water supplies were not maintained in a safe, habitable and working order condition.

63.     Defendant Mid-Atlantic Family Communities' breach of the property maintenance standard of care required by the Virginia Maintenance Code proximately caused Plaintiff personal injury, which such injuries and damages the Building Code was enacted to prevent, and Defendant Mid-Atlantic Family Communities is liable and . negligent *per se* to Plaintiff for all personal injury, mental anguish, emotional distress, compensatory damages and harms caused by such violations.

## COUNT IV

### VIOLATION OF VA. CODE § 8.01-226.12, NEGLIGENCE AND/OR NEGLIGENCE PER SE AGAINST DEFENDANT MID-ATLANTIC FAMILY COMMUNITIES

64.     Paragraphs 1 - 63 are realleged and incorporated herein.

65.     Va. Code § 8.01-226.12 is a statute enacted to protect the public health and safety, and to ensure the safety of occupants in applicable landlord housing in

Virginia.

66.     Plaintiff, as an occupant of such applicable housing, is a member of the public intended to be protected by the code provisions.

67.     The provisions of code Section 8.01-226.12 are mandatory, employ the use of the word shall, and must be followed explicitly.

68.     Va. Code § 8.01-226.12(E) provides that if visible evidence of mold occurs within the dwelling unit, the landlord and/or the managing agent shall, exercising ordinary care, perform mold remediation in accordance with professional standards.

69.     Professional standards, as referenced in the above code, are identified in code section 8.01-226.12(A) "Mold Remediation in Accord with Professional Standards." The codified professional standards establish the standard of care, by statute, to be exercised in mold remediation.

70.     Visible mold grew and "occurred" inside the subject unit within the meaning of Va. Code § 8.01-226.12(E), such mold growths resulting from water leaks inside the unit.

71.     Va. Code § 8.01-226.12(F) provides that the landlord shall comply with any other applicable provisions of law.  The provisions of the Virginia Residential Landlord Tenant Law, Va. Code § 55-248.3, et seq., is the applicable law by the terms of the lease itself as well as applicable law.

72.     Regardless of when the mold first occurred inside the unit, Defendant Mid-Atlantic Family Communities failed to remediate the mold conditions in accordance with professional standards, incurred building code violations, exposed the Plaintiff to excessive mold levels and caused additional harm to plaintiff in the performance of such

19

negligent remediation.

73.    Defendant Mid-Atlantic Family Communities, as landlord, failed to follow any of the requirements of Section 55-248.13 of VRLTA, i.e., did not control moisture or prevent the growth of mold, did not do what was necessary to make the unit safe and habitable, and did not remediate in accordance with Virginia Standards for Mold Remediation.

74.    Defendant Mid-Atlantic Family Communities failed to comply with the mandatory requirements of Va. Code § 55-248.18:2 by failing to timely provide adequate alternative housing.

75.    Plaintiff is a person within the meaning of Va. Code § 55-248.40 who may sue any other person, which includes Defendant Mid-Atlantic Family Communities, for any violation of VRLTA, which is now incorporated as a personal injury action under Section 8.01-226.12(F).

76.    The Defendant Mid-Atlantic Family Communities' failure to follow the mandatory provisions of Code Section 8.01-226.12(E) and (F) were the proximate cause of Plaintiff's injuries and damages and Defendant Mid-Atlantic Family Communities is liable in negligence/ negligence per se for violation of the code requirements of Va. Code §§ 8.01-226.12(E) and (F).

### COUNT V

### VIOLATION OF VA. CODE § 8.01-226.12, NEGLIGENCE AND/OR NEGLIGENCE PER SE AGAINST DEFENDANT LPC PROPERTY MANAGEMENT

77.    Paragraphs 1 - 76 are realleged and incorporated herein.

20

78.    Va. Code § 8.01-226.12 is a statute enacted to protect the public health and safety, and to ensure the safety of occupants in applicable landlord housing in Virginia.

79.    Plaintiff, as an occupant of such applicable housing, is a member of the public intended to be protected by the code provisions.

80.    The provisions of code Section 8.01-226.12 are mandatory, employ the use of the word shall, and must be followed explicitly.

81.    Va. Code § 8.01-226.12(E) provides that if visible evidence of mold occurs within the dwelling unit, the landlord and/or the managing agent shall, exercising ordinary care, perform mold remediation in accordance with professional standards.

82.    Defendant LPC Property Management is a managing agent as that term is defined in Va. Code §§ 8.01-226.12(E, F).

83.    Professional standards, as referenced in the above code, are identified in code section 8.01-226.12(A) "Mold Remediation in Accord with Professional Standards." The codified professional standards establish the standard of care, by statute, to be exercised in mold remediation.

84.    Visible mold grew and "occurred" inside the subject unit within the meaning of Va. Code § 8.01-226.12(E), such mold growths resulting from water leaks inside the unit.

85.    Va. Code § 8.01-226.12(F) provides that the managing agent shall comply with any other applicable provisions of law. The provisions of the Virginia Residential Landlord Tenant Law, Va. Code § 55-248.3, et seq., is the applicable law by the terms of the lease itself as well as applicable law.

21

86.   Regardless of when the mold first occurred inside the unit, Defendant LPC Property Management failed to remediate the mold conditions in accordance with professional standards, incurred building code violations, exposed the Plaintiff to excessive mold levels and caused additional harm to plaintiff in the performance of such negligent remediation.

87.   Defendant LPC Property Management, as the managing agent, failed to follow any of the requirements of Section 55-248.13 of VRLTA, i.e., did not control moisture or prevent the growth of mold, did not do what was necessary to make the unit safe and habitable, and did not remediate in accordance with Virginia Standards for Mold Remediation.

88.   Defendant LPC Property Management failed to comply with the mandatory requirements of Va. Code § 55-248.18:2 by failing to timely provide adequate alternative housing and failing to remediate Plaintiff's belongings.

89.   Plaintiff is a person within the meaning of Va. Code § 55-248.40 who may sue any other person, which includes Defendant LPC Property Management for any violation of VRLTA, which is now incorporated as a personal injury action under Section 8.01-226.12(F).

90.   Defendant LPC Property Management's failure to follow the mandatory provisions of Code Sections 8.01-226.12(E) and (F) were the proximate cause of Plaintiff's injuries and damages and Defendant LPC Property Management is liable in negligence/ negligence per se for violation of the code requirements of Va. Code §§ 8.01-226.12(E) and (F).

22

## COUNT VI

## VICARIOUS LIABILITY FOR COMMON LAW NEGLIGENCE AGAINST LINCOLN PROPERTY COMPANY

91.    Paragraphs 1 - 90 are realleged and incorporated herein.

92.    Defendant Lincoln Property Company is the umbrella entity of subsidiary Defendants Mid-Atlantic Family Communities and LPC Property Management, and pursuant to such umbrella organization, asserts management and control of the subsidiary entities and/or operates as a joint venture and/or principal agent relationship with such subsidiaries, and thus owed Plaintiffs the same duties as the above described and incorporated herein Defendants Mid-Atlantic Military Family Communities, LLC and LPC Property Management, and stands in the shoes of each such Defendant for all such duties and conduct toward Plaintiff.

93.    Under the umbrella organization scheme, vice-presidents of Defendant Lincoln Property Community are tasked with operational control and supervisory decision making by the subsidiary entities, makes and provides policy guidance on management issues, and provides and supervises training of subsidiary agent programs.

94.    As verified by website materials, military contracts and leasing arrangements, Defendant Lincoln Property Company is the creator and controlling source of funding, contracting and organizational structure for housing with the military.

95.    Defendant Lincoln Property Company, operating through and under its brand name, Lincoln Military Housing, and through its various vice-presidents, assumed multiple duties of contact and representation with Tenants, directed supervision and control of mold remediation or deciding whether mold remediation was needed or not,

23

made representations to Plaintiffs concerning the quality and condition of the unit, made relocation and housing condition decisions that directly affected Plaintiffs' health and well-being, and assumed responsibility for remediation, or not, of Plaintiffs' property and unit. As a result of these multiple assumptions of duty and breaches thereof, Lincoln Property Company is equally liable having assumed and breached such duties with the other named Defendants Mid-Atlantic Military Family Communities and LPC Property Management, LLC

96.     As a direct result of  Lincoln Property Company and is subsidiary entities Mid-Atlantic Military Family Communities, LLC and LPC Property Management, LLC's failure to timely and properly investigate, and/or remediate with reasonable care the mold and moisture conditions, Plaintiff suffered personal Injury, incurred medical expenses, and suffered emotional distress, with all such injuries and harms being proximately caused by the named Defendants Lincoln Property Company, Mid-Atlantic Military Family Communities, LLC, and LPC Property Management, LLC, and all such named Defendants are liable therefore.

### REQUEST FOR PUNITIVE INSTRUCTION
### AGAINST DEFENDANTS
### LINCOLN PROPERTY COMPANY,
### MID-ATLANTIC MILITARY FAMILY COMMUNITIES LLC AND
### LPC PROPERTY MANAGEMENT, LLC

97.     Paragraphs 1- 96 are realleged and incorporated herein.

98.     Defendants Mid-Atlantic Military Family Communities, LLC and LPC Property Management, LLC are part of a large national, even international, housing industry operating under an umbrella of Lincoln Property Company.  As such, each of the

24

Defendants, Mid-Atlantic Military Family Communities, LLC, LPC Property Management and Lincoln Property Company, knew or should have known the potential health risks presented by excessive mold and moisture conditions which had been documented and subject to world wide scientific and medical reporting for years.

99.    Despite this knowledge, and the clear understanding that excessive moisture and mold conditions could cause personal injury, the Defendants Mid-Atlantic Military Family Communities, LLC, LPC Property Management, LLC and Lincoln Property Company adopted and/or implemented policies to hide and obscure mold contamination, including, but not limited to, (1) a policy instruction to employees and agents to never use the word "mold" when speaking to tenants or other persons, but to refer to such conditions as "dirt" or unknown material or just water damage, all to mislead tenants; (2) a policy to perform repairs as cheaply as possible, and to offer rewards and bonuses to property managers who stay within maintenance budgets regardless of extensive mold and moisture problems; (3) the use of persons unqualified to perform mold remediation and to even assess mold or moisture conditions to save money; (4) a policy to not sample for mold to affirm a contaminated condition, if at all, and if so, to take such samples only after mold remediation was performed so that the tenant would never know what molds or what mold levels to which they were originally exposed, or to take samples, if any, of only a limited value and never designed to actually assess or inform tenants of what molds were present; (5) a policy not to take air samples in a mold contaminated unit thereby denying the tenant and their doctors critical exposure information for both person and property.

25

100.    Defendants Lincoln Property Company, Mid-Atlantic Family Communities, LLC, and LPC Property Management LLC, upon information and belief, conspired amongst themselves to employ measures to prevent tenants from identifying the true nature of any mold or moisture problem by (1) aggressively intimidating and prohibiting independent mold inspections; (2) making false statements about the lack of need for cleaning mold contaminated property; (3) intimidating military tenants, often enlisted persons or their spouses, by accusing them of keeping an unclean house in military housing, making irresponsible complaints, and accusing tenants of not reporting mold or moisture conditions and denying mold presence, all to place fear in such persons or cause retribution by their military commanders; (4) adopting maintenance approaches which failed to properly evaluate and correct mold and water problems by treating such conditions incrementally and waiting for the next complaint before properly fixing the problem, thereby exposing tenants to months of mold exposure instead of days, and (5) retaining "independent" mold remediators under pre-determined protocols which reduced the scope of remedial work, and were often unqualified and/or unlicensed, resulting in some tenants being returned to still-contaminated homes after cleaning, and making some tenants sick from later exposure to uncleaned or improperly cleaned personal belongings.

101.    Defendants Mid-Atlantic Military Family Communities, LLC, LPC Property Management, and Lincoln Property Company, when their improper and ineffective maintenance programs were exposed and tenants became injured, then commenced an aggressive publicity campaign to deny tenant claims of unsafe conditions, including TV interviews in which Defendants themselves refused to acknowledge tenant housing

26

conditions or pictures of mold from tenant homes, and launched, with intent and foresight, a continuous public campaign urging people not to believe the claims of other tenants injured by Defendants' neglect and greed, to discredit testing, and to deny the dangers of mold exposures to the health of tenants.

102.    In the context of all of the above misleading and false representations, Defendants Mid-Atlantic Military Family Communities, LLC, LPC Property Management, LLC and Lincoln Property Company continued to publish news releases and documents purporting to advance their self-serving interest in the health and safety of their military family tenants with the clear intent to disparage and discredit those that they had harmed.

103.    Defendants Mid-Atlantic Military Family Communities, LLC, LPC Property Management, LLC and Lincoln Property Company would delay for weeks and months final reports of mold investigations, even where such investigations showed an immediate health risk to occupants, and held phone conferences and meetings with tenants using their own mold inspectors, military staff and housing officials to intimidate, harass and convince tenants that there was no mold problem, or that it was much less than professional standards would warrant.

104.    Defendants Mid-Atlantic Military Family Communities, LLC, LPC Property Management, LLC and Lincoln Property Company failed to warn tenants of past problems with water and mold in military housing, lost or failed to keep complete maintenance records, and rarely left the tenant with any paper documenting a maintenance visit, what work was done, or the identity of the maintenance or management person(s), making it impossible for tenants to follow or understand vital maintenance conditions.

105.   The above actions of Defendants Mid-Atlantic Military Family Communities, LLC, LPC Property Management, LLC and Lincoln Property Company consciously and intentionally planned and carried out in a comprehensive scheme to minimize their costs, to consciously hide and misrepresent potentially dangerous mold conditions, all in conscious disregard for Plaintiff's health and well-being, were grossly negligent, false and misleading, and done with the intent to prevent the tenants from discovering the true nature of their exposures, thereby directly threatening and causing personal injury, and a punitive instruction is warranted.

### RELIEF REQUESTED

Plaintiff asks this Court to award all proven compensatory damages, including medical bills, pain and suffering, mental anguish and emotional distress against all named Defendants for mold caused personal injuries in the amount of Four Hundred Thousand dollars ($400,000).  Punitive damages are sought against all named Defendants, jointly or separately, in the amount of $500,000.  Pre- and post-judgment interest is requested.

### A JURY TRIAL IS REQUESTED

Respectfully filed,
Dante Venvertloh
By Counsel

David S. Bailey, Esq. (Va Bar 24940)
The Environmental Law Group, PLLC
Liberty Plaza One, Suite 106
4801 Cox Road
Glen Allen, Virginia 23060
Telephone:  804-433-1980
Facsimile:  804-433-1981
email:  dbailey@envirolawva.com

28